(October 25, 1985)

■ In the Matter of KATHLEEN B. WALSH, Appellant, v ANTONIA D'APICE et al., Respondents, and JUSTIN T. REGAN et al., Respondents-Respondents.—In a proceeding to set aside the results of the Conservative Party primary election held on September 10, 1985 for 6th Ward Councilmember in the City of Yonkers, the appeal is from a judgment of the Supreme Court, Westchester County (Jiudice, J.), entered October 8, 1985, which dismissed the proceeding.

Judgment reversed, on the law and the facts, without costs or disbursements, petition granted, and the Board of Elections of Westchester County is directed to conduct a new Conservative Party primary election for 6th Ward Councilmember in the City of Yonkers, to be held on Tuesday, October 29, 1985.

Petitioner Walsh, who lost the primary election at issue here by three votes, seeks to have the results of the election invalidated on the basis of the votes of nine voters which she claimed were registered at addresses which were not their residences under the Election Law. We find that the residences listed on the challenged registrations were not the "fixed, permanent and principal home * * * to which [the registrant], wherever temporarily located, always intends to return" (Election Law § 1-104 [22]).

Six of candidate Justin Regan's relatives by blood or mar-

riage, who lived a few blocks away from Mr. Regan's residence, but in another ward, reregistered on July 10, 1985 for the September 10, 1985 primary election using Regan's address as their residence. At the trial of this matter, four of these registrants were not called by Mr. Regan, and did not testify as witnesses. Regan's mother and mother-in-law testified that they moved into Regan's house to assist Regan and his wife in the care of their infant on alternate nights during the campaign, and each of these witnesses stated that two of her adult children accompanied her and also lived at Regan's house. In May or June 1985, Regan's mother purchased a house in the 6th Ward. Regan testified that respondents Stuart G. Minsky, Robert Strauss and Shelly Strauss rented that house from July 1, 1985 to September 15, 1985 and that he assisted them in registering for the primary using that address as their residence. Three independent witnesses who were neighbors testified that, from their observations, no one was living in the house all summer. These three registrants also were not called as witnesses by candidate Regan, and they did not testify.

The trial testimony, and the inferences fairly to be drawn from it, as well as the failure of most of the registrants who were under the control of candidate Regan to testify in his behalf, leads us to conclude that all nine of those registrants were not residents of the 6th Ward within the definition of the Election Law (see, Election Law § 1-104 [22]). The testimony clearly indicated that the mother and the mother-in-law's presence was merely for the purpose of assisting in babysitting during the campaign. What role the other four relatives played is not explained. Similarly, although there was some conflicting evidence, the short duration of the lease of Regan's mother's house and the testimony of the three independent witnesses that the house was vacant during the summer, leads to the conclusion that the tenants' registrations were invalid.

In view of our holding that nine of the voters in the primary election which was won by a margin of three were invalidly registered, it will be necessary to hold a new primary (see, Election Law § 16-102 [3]). Lazer, J. P., Gibbons, Eiber and Kunzeman, JJ., concur.